UNITED STATES of America,
Plaintiff–Appellee,

v.

Ervin Lee FRANKLIN, Defendant–
Appellant.

No. 91–8989.

United States Court of Appeals,
Eleventh Circuit.

Sept. 22, 1992.

Paul S. Kish, Federal Defender Program, Inc., Atlanta, Ga., for defendant-appellant.

John Davis, Asst. U.S. Atty., Atlanta, Ga., for plaintiff-appellee.

Before KRAVITCH, Circuit Judge, CLARK, Senior Circuit Judge, and PITTMAN *, Senior District Judge.

PITTMAN, Senior District Judge:

Appellant Ervin Franklin was indicted on January 3, 1991, for being a previously convicted felon in possession of a .22 caliber pistol in violation of 18 U.S.C. § 922(g)(1). Appellant's motion to suppress the gun was denied by the district court. Appellant conditionally plead guilty with leave to appeal to this court the suppression issue.

Appellant was subject to the enhanced sentencing provisions of 18 U.S.C. § 924(e), the Armed Career Criminal Act ("ACCA"), because of his multiple prior felony convictions. The district court denied Franklin's objection to the enhanced sentence, ruling that his prior convictions were based upon voluntary and knowing guilty pleas. The district court concluded that under the law it had no choice but to impose the fifteen-

* Honorable Virgil Pittman, Senior U.S. District Judge for the Southern District of Alabama, sitting by designation.

year minimum mandatory sentence required by section 924(e).

## I. FACTS

Appellant's arrest resulted from a federal investigation involving his fellow employee, Johnny Jones. Franklin, Jones and Gregory Robinson, a private undercover security investigator, were all employees at Martin, Sprocket and Gear ("MSG"). The undercover investigator informed Gene Richards, an agent with the Bureau of Alcohol, Tobacco and Firearms ("ATF"), that Jones was attempting to sell automatic weapons and cocaine and that Franklin claimed to be stealing cars and committing burglaries with Jones and a man named Junior. Furthermore, Richards was informed that Franklin had said he had an assault rifle and carried a weapon. ATF agent Richards ran a computer check on Franklin and verified Franklin's 1981 theft and burglary convictions.

The private investigator informed Richards that Jones and Junior had arranged to sell him three automatic weapons and crack cocaine at a time certain.

The transaction was to take place at night in a dimly lit parking lot area near the vicinity of MSG. Richards and a companion ATF agent placed themselves in an unmarked car near the proposed scene to observe the illegal transaction.

As Jones and his companion arrived at the scene, Jones noticed police equipment in the unmarked car and told Junior not to go through with the deal. However, they did not leave but stood and looked at the unmarked car.

At about that time, Franklin came out of the nearby MSG building, got in his car and drove to where Jones was standing. They had an abbreviated conversation and Franklin then pulled behind the unmarked police car and parked. He then turned off his light and the ignition, and waited. At that time, Jones, Junior and the two private undercover persons left. Franklin and the two ATF agents remained in their respective cars. ATF agent Richards had a description of Franklin and suspected the man in the car behind the police car was

Franklin. Richards knew Franklin had a criminal record and had been reliably informed that there was to be a gun and drug transaction at the time and place this occurred.

Richards testified he concluded Franklin parked behind him for the purpose of conducting a back-up surveillance for those involved in the illegal transaction and he feared being shot in the back in the dimly lit area of the parking lot. Richards called for a marked police car but it did not arrive. After 25 or 30 minutes, Franklin got out of his car and started to walk away. The two ATF agents got out of their car with weapons concealed and asked to speak with Franklin for a minute. Franklin stopped, turned towards Richards and said, "What do you want?" After a few steps, Franklin put his hand in his pocket. Based on his information of Franklin's criminal history, of the proposed illegal transaction, that Franklin carried a weapon, and being in a dimly lit area of a parking lot, Richards testified he feared the appellant was reaching for a weapon. Richards pulled his gun and announced he was a police officer. They did a frisk of Franklin and found a .22 caliber 6–shot revolver in his jacket. Richards informed the appellant he was under arrest and handcuffed him.

### The Appellant's Guilty Pleas—1980 & 1981

On May 30, 1980, appellant pleaded guilty to burglary in Stephens County, Georgia Superior Court. The court sentenced appellant under the First Offender Act to four years probation.

On January 22, 1981, the appellant entered guilty pleas in five Habersham County Superior court cases involving seven separate felonies: five burglaries, one arson and one motor vehicle theft. Franklin, represented by counsel, waived arraignment and entered written pleas of guilty in each of the five Habersham County cases. It was stated that a hearing was being held on a petition to set aside Franklin's first offender status and also for the sentencing in the five Habersham County cases.

The court swore the appellant and a dialogue followed in which the appellant was asked about the Habersham County indictment charging motor vehicle theft, going into substantial detail concerning the facts of the case, to which the appellant admitted his participation. Thereafter, the court concluded the plea was entered freely and voluntarily and held that evidence was sufficient to revoke the appellant's first offender status. This motor vehicle theft is a felony but is not a violent crime for purposes of the ACCA.

The court then informed appellant that he was charged with arson in the second degree and five counts of burglary. The court further informed appellant of the right to a speedy and public trial, the right to plead not guilty, the right to an attorney, and the right against self incrimination. The court further advised the appellant the charges against him were burglary and arson. The court also informed appellant of the maximum sentence for each crime charged and told appellant he faced a maximum of 117 years in the state penitentiary if he plead guilty to all the charges.

The court then questioned if appellant had any complaints to make about his counsel. Appellant replied that he did not. The court also asked appellant if his counsel answered all his questions satisfactorily, to which appellant nodded affirmatively.

Appellant's counsel then informed the court that appellant was alert and sober, that he had explained the nature of all the charges to appellant, and that appellant had no defenses to these cases.

There is nothing in the record affirmatively showing that the indictment was read to the appellant in court, nor the evidence the state would proffer, nor that there was further colloquy between the court and the appellant nor the attorneys concerning these offenses.

The court then sentenced appellant to five years in the state penitentiary for each of the felonies to be served concurrently. After sentencing, the court gave appellant and his counsel an opportunity to withdraw the plea and stand trial on any of the charges, to which Franklin's counsel declined. Finally, the court informed appellant of his right to appeal the sentence.

## II. DISCUSSION

### Search and Seizure

The district court ruled that the gun could not be suppressed because Richards' actions toward appellant constituted an investigative stop supported by reasonable and articulable suspicion. The district court alternatively ruled that the agents legitimately frisked appellant to insure their safety, regardless of whether they had reason to make an investigative stop. The district court ruled that the arrest occurred when agents learned that defendant possessed a gun and his admission to being a convicted felon. The gun possession and admission constituted probable cause for the arrest.

Appellant raises three challenges to the district court's order. First, appellant alleges that he was arrested without probable cause when he was spread-eagled at gun point and frisked. Second, even if this is merely a *Terry* stop, it is unsupported by reasonable and articulable suspicion. Third, the frisk was not justified by safety considerations.

### STANDARD OF REVIEW

■ "Rulings on motions to suppress evidence involve mixed questions of law and fact." *United States v. Garcia*, 890 F.2d 355, 358 (11th Cir.1989). The district court's findings of fact are reviewed under the clearly erroneous standard, while its application of the law to those facts are subject to *de novo* review. *Id.* at 359.

### ARREST

■ The court recognizes that generally a person is arrested when, "in view of all of the circumstances surrounding the incident, a reasonable person would have believed that he was not free to leave." *United States v. Hammock*, 860 F.2d 390, 393 (11th Cir.1988). However, "[i]n determining when an investigative stop ripens into an arrest, no bright line rule exists." *United States v. Hastamorir*, 881 F.2d 1551, 1556 (11th Cir.1989). It is well set-

tled that a stop is not necessarily converted into an arrest requiring probable cause when police pull weapons for purposes of safety. *United States v. Pantoja–Soto,* 768 F.2d 1235, 1236 (11th Cir.1985).

■ The district court was correct in ruling that appellant was not under arrest when he was spread-eagled and frisked. As the district court reasoned, "[t]he stop was a brief one which had ripened from a mere question directed at [appellant] ("sir, can we speak to you a minute,") into an immediate need for the officers to detain [appellant] and protect themselves from harm," when appellant reached downward, possibly for a concealed weapon. The scope of the search was not overly intrusive in light of the safety concern, and the scope of the search was, "strictly tied to and justified by the circumstances which rendered its initiation permissible." *Hastamorir,* 881 F.2d at 1556.

*TERRY* STOP

■ Appellant argues that even if this detention did not rise to the level of an arrest, the agents lacked sufficient information to detain him. Police officers may engage in a brief investigatory detention of a person if they have reasonable, articulable suspicion based on objective facts that the person has been, is or is about to be engaged in criminal activity. *Terry v. Ohio,* 392 U.S. 1, 88 S.Ct. 1868, 20 L.Ed.2d 889 (1968).

There were several acts to support Richards' stop which the district court recognized. Richards had reliable information that defendant might be Franklin, a convicted felon who likely carried a gun in violation of 18 U.S.C. § 922(g)(1). Franklin's unusual behavior in parking immediately behind Richards at night in a poorly lighted place indicated that he might be aiding a gun and drug transaction, of which Richards had knowledge, by providing surveillance or cover. Finally, when Franklin reached downward with his hands after being questioned, Richards had a reasonable suspicion that Franklin was about to reach for a gun.

Appellant argues that information gained by an undercover agent that appellant possessed firearms is unreliable, that it is merely speculation to believe that appellant could have been providing surveillance for the drug deal, and that agents cannot claim to fear that appellant might draw a weapon after they followed him down a dark alley and he turned to them as they spoke. The court finds appellant's arguments unpersuasive. There were reasonable and articulable justifications for making an investigatory stop where a person whom the agents know has knowledge of a probable criminal transaction in progress leaves work, stops briefly to speak with the drug dealers, and returns to park behind police agents in a position to provide surveillance.

THE FRISK

■ Appellant finally argues that the agents were not justified in frisking him for their own safety. The district court ruled that the agents were justified in frisking appellant because they were, "aware of specific facts which would warrant a reasonable person to believe that he was in danger." *United States v. Bonds,* 829 F.2d 1072, 1074 (11th Cir.1987). Distinct from their suspicions which justified a *Terry* stop, the agents were aware that the person in the car behind them could be appellant and had reliable information that appellant carried a gun. Objectively, reasonable fear based on specific facts regarding specific individuals justifies a frisk to prevent injury. *Bonds* at 1074.

The appellant's argument to the contrary was not persuasive.

*Sentence Enhancement*

Appellant argues that the district court erred in sentencing him under section 924(e) because only one of his prior convictions was obtained in a constitutional manner. Without the requisite three prior violent felonies, section 924(e) did not apply. Appellant argues that the lower court never asked him if he was guilty of these crimes, never established that there was evidence showing his guilt, and never established that he was aware of all of his constitutional rights.

■ Appellant bears the burden of proving the constitutional invalidity of his prior convictions. *United States v. Ruo*, 943 F.2d 1274, 1276 (11th Cir.1991). Review of the voluntariness of a guilty plea is subject to *de novo* review. *LoConte v. Dugger*, 847 F.2d 745 (11th Cir.1988).

■ Appellant has satisfied his burden of proof. In the absence of an expressed or affirmative showing in the record that the appellant was informed of as much as there was in the indictment, which would have shown among other things when and where the burglaries and arson were committed, or that there was a proffer by the state reflecting this information or that there was a colloquy in the appellant's presence of the allegations in the indictment or facts supporting the allegations and that the appellant understood these allegations, the record, at a minimum, should reflect that the indictment was read to him and that he understood the charges. The sentencing judge must, "explain the statute sufficiently to give the defendant real and adequate notice of the nature of the charge against him or find proof that the defendant in fact understood the charge." *Moore v. Balkcom*, 716 F.2d 1511, 1526 (11th Cir.1983); *Cf., Stano v. Dugger*, 921 F.2d 1125 (11th Cir.1991).

We hold the failure of the record to affirmatively show the information set out above is insufficient and does not reflect the appellant could have knowingly and voluntarily plead to each of the burglary and arson charges.

## III. CONCLUSION

Appellant's conviction under section 922(g)(1) for possession of a firearm is AFFIRMED for the district court correctly denied appellant's motion to suppress evidence. Appellant's sentence is VACATED and this cause is REMANDED for re-sentencing in light of our opinion above.